# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **PETER M. BONUTTI, M.D.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 4409 |
| v. ) | (Main Proceeding Case |
| ) | No. 02 C 1018 in the |
| **LEHMAN BROTHERS, INC.;** ) | Northern District of Ohio) |
| **SG COWEN SECURITIES CORPORATION;** ) | |
| **COWEN & COMPANY; and** ) | Judge John W. Darrah |
| **FRANK GRUTTADAURIA,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

In May 2002, Plaintiff, Peter M. Bonutti, M.D., filed suit in the United States District Court for the Northern District of Ohio Eastern Division against Defendants, alleging fraud, breach of fiduciary duty, aiding and abetting, civil conspiracy, promissory estoppel, negligent misrepresentation, breach of contract, conversion, negligent hiring, negligent supervision, negligence, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. Presently before the Court is Defendant's Motion to Compel Compliance with Subpoenas *Duces Tecum*.

## BACKGROUND

A reading of Bonutti's Complaint and the other materials presented in support and in opposition of the present motion supports the following summary of the alleged conduct of the parties.

In September 1991, Bonutti opened an individual investment account with Cowen & Company ("Cowen"). Frank Gruttadauria, who was a broker at Cowen, began soliciting Bonutti's

investment business. In early 1992, Bonutti agreed to allow Gruttadauria to manage his Cowen individual investment account. At that time, Gruttadauria was already engaged in a systematic pattern of defrauding clients. That fraud included: (1) inducing clients to turn over their money and securities so that he could convert the money and securities for his own benefit, (2) forging and falsifying documents in connection with client accounts, (3) taking money from clients' accounts and paying it to third parties without the knowledge or permission of the clients, (4) preparing and sending false statements and documentation to clients, (5) diverting clients' mail to unauthorized addresses for purposes of concealing the fraud, (6) making fraudulent representations, (7) providing fraudulently prepared documentation for tax purposes to clients or bypassing the clients and sending those directly to the clients' accountant, and (8) causing clients to pay hundreds of thousands of dollars in income taxes on transactions that did not occur.

In 1998, Cowen was acquired by another company and became SG Cowen. In October 2000, Lehman Brothers, Inc. acquired part of SG Cowen, including Bonutti's investment account. Cowen, SG Cowen, and Leham employed Gruttadauria and held him out as one of their top investment representatives with management responsibilities. Gruttadauria's fraudulent conduct occurred while employed by the Defendant investment firms.

Over a ten-year period, Gruttadauria employed various devices to covert Bonutti's investments for Gruttadauria's own use. These devices included sending Bonutti fraudulent account statements on SG Cowen and Lehman forms and sending the true account statements to others, including personal friends of Gruttadauria. From September 1999 through November 2001, Bonutti deposited over $4 million into his investment account. In January 2002, Bonutti believed his account had a balance of over $16 million – his account actually contained approximately $35,000.

In January 2002, Gruttadauria sent a letter to the Federal Bureau of Investigation, stating that he caused the misappropriation of funds during the last fifteen years while employed at Cowen, SG Cowen, and Lehman. Later, Gruttadauria admitted, under oath, that he misappropriated over $104,000,000 from his clients from approximately 1990 to January 2002.

Subsequently, Bonutti filed suit against Gruttadauria and his employers, alleging that the employers bear responsibility for Gruttadauria's crimes while he acted as an account representative for Bonutti's investment accounts.

In June 2005, Cowen served subpoenas *duces tecum* in the pending action on David and Mark Cottrell and their accounting firm of Cottrell & Associates (collectively "Cottrells"). The documents Cowen seeks to be produced include, in part: (1) all documents related in any way to Gruttadauria, (2) all documents related in any way to any of Gruttadauria's customers, (3) all documents related in any way to accounting services rendered by Cowen to Gruttadauria or any of his customers, (4) all documents related in any way to communications between the Cottrells and Frank Gruttadauria, (5) all documents related in any way to accounts held by any of the Defendants, (6) the Cottrells' federal tax returns for the years 1987 through 2001, and (7) all documents received by the Cottrells that concern in any way Gruttadauria. Cowen also seeks the depositions of David and Mark Cottrell. The Cottrells objected to the scope of the subpoenas and have not produced the requested documents or appeared for their depositions. Cowen has filed the instant motion in this Court to compel compliance with subpoenas. The Cottrells oppose this motion.

## ANALYSIS

"A subpoena may be served by any person who is not a party and is not less than 18 years of age." Fed. R. Civ. P. 45(b)(1). The party issuing the subpoena must take reasonable steps to

3

avoid imposing an undue burden or expense on the person subject to the subpoena. Fed. R. Civ. P. 45(c)(1). If the subpoenaed party objects to the subpoena, the party serving the subpoena is entitled to inspect and copy the materials requested absent an order of the court by which the subpoena was issued. Fed. R. Civ. P. 45(c)(2)(B). The court may modify or quash the subpoena if it subjects a person to an undue burden or requires the disclosure of privileged or other protected matter and no exception or waiver applies. Fed. R. Civ. P. 45(3)(A)(iii), (iv).

The Cottrells argue that the documents requested are not relevant to the Bonutti suit. Cowen argues that the documents are relevant because they may show that the Cottrells were involved or knew about Gruttadauria's fraudulent scheme.

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim .... Relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence ...." Fed. R. Civ. P. 26(b)(1).

The Cottrells have not been named a defendant in Bonutti's suit and are not included in any of the allegations, nor are there allegations connecting the Cottrells with Bonutti. The Cottrells did have a relationship with Gruttadauria until October 1991, at which time they severed ties with Gruttadauria because the Cottrells believed that Gruttadauria was engaging in questionable investment activities. At that time, the Cottrells were paid out the balance of their investment account of $9 million. The Cottrells did provide accounting services to some of Gruttadauria's clients whose accounts were impacted by Gruttadauria's fraud. Some of these clients did not lose any money but were net "winners" in Gruttadauria's fraud scheme. David and Mark's aunt also was a client of the Cottrells and a Gruttadauria client. From June 1992 through August 1995, Gruttadauria diverted Bonutti's real Cowen account statements to the same aunt's home address in

Addison, Illinois. Mark and David's aunt terminated her business relationship with the Cottrells when the Cottrells terminated their business relationship with Gruttadauria.

Based on the allegations in Bonutti's Complaint and the other facts set forth above, some of the information sought by Cowen is reasonably calculated to lead to the discovery of admissible evidence that would be relevant to possible defenses of Cowen, including that Cowen did not know and could not have known about Gruttadauria's conduct and/or that others helped hide Gruttadauria's fraudulent conduct.

While some of the documents requested are likely to produce relevant evidence, generally, the document request is overly broad. The request does not contain a time limitation as to most of the documents, and the time limitations that are included are overly broad. In addition, some of the documents, such as the Cottrells' income tax returns for fourteen years, do not appear to lead to admissible evidence in the present litigation. Accordingly, the subpoena must be modified.

Gruttadauria began the alleged fraudulent acts in 1990 or 1991. Accordingly, documents created within the time frame of 1990 to 1991, when the Gruttadauria business relationship ended, plus one year following the end of the relationship (1992), if produced, will disclose material which could lead to the discovery of admissible evidence. Furthermore, if the documents produced from this time frame demonstrate that additional materials beyond this time are discoverable, Cowen can move for production of such documents. Presently, requiring production of documents from a fourteen-year period cannot be justified.

In addition, Cowen has not demonstrated that certain document requests are reasonably calculated to lead to the discovery of admissible evidence. These document requests include: (1) the Cottrells' federal tax returns for the years 1987 through 2001 and any related documents and (2) the

5

documents received by Cottrell since January 2001 from SG Cowen, Lehman or any other person or entity related in any way to Gruttadauria, including but not limited to documents related in any way to the Special Arbitration Process established by the Securities and Exchange Commission Orders in *In the Matter of SG Cowen Securities Corporation*, No. 3-11216, and in *In the Matter of Lehman Brothers, Inc.*, No. 3-11217, and established by the New York Stock Exchange's Exchange Hearing Decisions 03-156 and 03-157. Accordingly, the motion to compel production of these documents is denied.

The Cottrells also argue that some of the requested documents are privileged but have not submitted a privilege log to enable a determination of privilege. A blanket statement of privilege is insufficient. Accordingly, once the documents requested are determined, the Cottrells may submit a privilege log listing documents they claim are protected by a privilege and setting out the reasons therefore.

Lastly, the Cottrells seek reimbursement for the time and expense of producing the requested documents. The court has "considerable discretion in determining whether expense-shifting in discovery production is appropriate." *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996). Based on the limitations set out herein, the burden on the Cottrells' is greatly reduced. Accordingly, reimbursement for complying with the document requests is denied.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Compliance with Subpoenas *Duces Tecum* is granted in part and denied in part. The Cottrells shall produce the materials, consistent with the above rulings, within 21 days from the date of this order. Mark and David Cottrell shall be deposed within thirty days of the production of the documents if such deposition(s) are needed and notice is timely and properly served.

Dated: October 27, 2005

JOHN W. DARRAH
United States District Judge